The next case for argument is 24-1436, Nutritia, North America v. United States. Good morning, Ms. Berman. Good morning. Please proceed. Good morning, Your Honors. Amanda Berman from Nutritia. At issue here is whether medical foods made in labs by pharmaceutical companies and prescribed by doctors to treat very ill children enter the country duty-free as medicaments for therapeutic use or are subject to steep tariffs as foods not elsewhere specified or included. Your Honors, the right answer to that question is the common-sense one. Medical foods, despite that food nomenclature, are medicaments, described in 3003 and 004 because they're used to treat diseases. And they're not like the foods that are covered by 2106 and other headings in Section 4. Did the Court of International Trade judge and the government concede that your products come under medicaments and then just go to 1A and say that the exclusion takes them out, or is there dispute whether they came under the medicaments? Your Honor, I don't think the government has disputed that they fall under 3004, under the broad-term medicaments for therapeutic use. It's basically said that in several places. The government and the district court, and we think they erred in this regard, they skipped that question, essentially, and they went right to note 1A. The district court never even conceded that they do fall within 3004, and under this court's decision in Sharpe, that alone was error, Your Honors. We do want to highlight that they fall under that broad term, but it's also important to note, Your Honor... But that doesn't matter, right? I mean, even if they, assuming they fell into the broad term, then we then have to go to 1A and say that they're excluded under 1A. Your Honor, we agree that you do have to look at 1A and say whether they meet that exclusion, and I'm happy to jump right to that. Your Honor, they don't meet the terms. But you do make a kind of methodological point. What is it about your wanting to start with a, I don't know, provisional conclusion that the medicament applies before getting to note 1A changes the standard or something about how to interpret note 1A? It sounds like you were making an argument that if it seems like it's within the provision before you get to the note, then there's an extra burden or something to get to a place where you would read the note to subtract from that. Is that the kind of point you're making? Your Honor, we think it's important to start with the heading because, as I'll get to in a minute, where there are arguably competing exclusionary notes or where there's ambiguity as to whether something falls within an exclusion, this Court's case law in Bauer and Lamont says that we need to look at the heading and apply the more specifically applicable heading. So that's where we think we are here. But we don't, you know, if you just take note 1A on its terms, Your Honor, we do not fall within the terms of that note. Medical foods are not included in that text. We have a list of things and examples. Diabetic foods first. Those are foods from which sugar has been removed. Fortified foods, food supplements, tonic and mineral waters. And then we have this term dietetic, which is where a lot of the fight is, Your Honor. I know there's a lot of fight there, but what bothers me more is that it says other than nutritional preparations for intravenous administration because you agree your product is a nutritional preparation, right? Yes, Your Honor. So why, reading it in its entirety, if you just take that phrase that the only nutritional preparations that we're going to allow are for intravenous administration, why isn't that a strong argument against your position? Your Honor, I think it's notable that the government's walked away from this argument because that would be an exception that eats much of the heading, Your Honor. To read that as saying that anything nutritional unless it's intravenous is excluded from this heading would mean a lot of things are not covered by that. And it's contrary to the terms of note 1F to 2106, which specifically says that this chapter does not cover yeast put up as a medicament or other products of heading 3003 or 3004. Under that understanding, yeast would have to be intravenously injected to qualify under 3003 or 3004. And as we tried to walk through in a brief, the history of that phrase at the end of the exclusion, it was an add-on. It was to make sure a specific thing is excluded. It wasn't to broaden the whole scope of the exclusion. And so I do think, you know, we look at this list of terms, and let's take the government's own definition of what dietetic means. The government uses the definition of food adapted for special use. Your Honor, these are not adapted foods. They are made in labs. They are marketed to doctors. They are part of the pharmaceutical supply chain. What do you think the word adapted means? You take an apple and do something to it? Well, Your Honor, looking at, for example, diabetic foods as a juice from Generis, things in the same category, foods from which sugar has been removed or something has been removed. That's not what these are. Despite that medical foods nomenclature, they're nothing like foods. They're a combination of amino acids, at least for three of the four products, that are specially manufactured, compounded in a lab. There's nothing food-like about them. They're not bred with something removed. So I think I got all of that. I want to ask you to focus just on the word adapted. What do you think the word adapted means? Changed, Your Honor. Let's take a simple dictionary definition. Start with a normal food and change it as opposed to start with individualized components that you will find in food and create a new product with them. Is that the distinction? Yes, Your Honor, that is the distinction, we think. The argument you're making now is based on what the product is. And I thought a big, a large chunk of your brief and your argument is we're not looking at that, we look at the use. So what are you saying here? Well, Your Honor, and that goes back to why it's important to start with those heading terms. As the court held in Warner-Lambert, 3004 is a used provision. And the use is medical, that's for therapeutic use. And it's not disputed that these are used solely to treat diseases. They're not used by healthy people. They can't be safely taken by healthy people. These are used to treat diseases. And Your Honor, this is where I think where we have arguably, if that's for the government, we've got competing exclusionary notes. And in that circumstance, this is where the explanatory notes can come in helpful. So I guess I was a little confused about this. It seemed to, just tell me why what I'm about to say is wrong. The exclusionary note in Chapter 21 says we don't apply if Chapter 30 applies. So as far as I can tell, we're done talking about Chapter 21. The only question is whether Chapter 30 applies. If it does, then the exclusionary note on Chapter 21 says we don't apply. If Chapter 30 doesn't, then subject, putting aside Chapter 98, 21 applies. So I don't see the competition. Sure, Your Honor. I think they are competing notes because there's another phrase in Note 21F, does not cover yeast put up as a medicament or other products of heading 2004. I think that example, yeast put up as a medicament, is fatal to the government's case. Yeast is actually specifically identified in Section 4. It's got its own heading. But this is telling us when it's put up as a medicament, when it's used for therapeutic use, then it goes in 3004. And that is the line we see drawn here. So I do think we have competing notes in the sense that Note 1A does not say medical foods. It does not specifically cover them by name. It's ambiguous. Dietetic is what we're looking at. Does that include? So we have these competing notes. We also, you know, if we need a tiebreaker here, let's look at Section 6, Note 2, which says if something is classifiable under 3004, then it can't be classified under any other heading. So, Your Honor, why I think we... I'm sorry. That was what? Section 6, Note 2. So that's another relative note under GRI 1 that applies here when we're interpreting 3004. So we've got those two notes on our end. And this is where I think tools like the explanatory notes really do come in helpful, Your Honor. And if you look at the explanatory note to 2106, as well as to 3004, they both draw the same line. So 2106, for example, notes that, you know, this heading covers food preparations, often referred to as supplements, based on extracts from plants, et cetera. It does not cover similar preparations intended for the prevention or treatment of diseases or ailments. We see the same line drawn in Note 3004, explanatory Note 3004. There's a line that says, but have no indication as to be used for the prevention or treatment of any disease or ailments. And it's describing what's excluded. It's only excluded if it has no use for the treatment of disease. These are only used to treat diseases, Your Honor. But what about going back to Note 1A, where it uses the term dietetic or diabetic? I mean, would that... would there be anything that you think is fairly construed as dietetic or diabetic that would also... Is there stuff there that would also be intended for prevention or treatment of diseases? You know, if you're trying to fight diabetes, so you do whatever you do to your diet to do it, that could be intended for prevention of diseases, right? Well, Your Honor, so insulin, yes. Insulin would be a medicament. It's not a diabetic food. Diabetic food, we think there, and we cited some definitions from the Mayo Clinic, that's foods used to support a healthy diet for a diabetic person. You can find those in a supermarket. You can find those in a drugstore. Those are a very different type of product. But those aren't, read broadly, intended for the prevention of diseases? Your Honor, no, they're not treating the disease. It doesn't say... they're not treating, but it says prevention or treatment of diseases. So forget treatment of diseases. I'm talking about prevention of diseases. Your Honor, I don't think diabetic foods prevent the disease. Diabetic foods, as I understand them, are used for somebody who has diabetes and needs a diet that's low in sugar. So you can find products in your supermarket that have those qualities. They are foods that are adapted for a particular health benefit. And, Your Honor, I mean, I think this gets back to the distinction this court threw in the Warner-Lambert case, where it said, okay, vitamin C drops, they do fall under the basket provision, and 2106 is the basket provision, because they're not being used to treat scurvy. The court was very clear that if they were being used to treat scurvy, then they would fall under the MediClint headache, but they weren't being used to treat scurvy. The new case never analyzed 1A right. No, it did not analyze 1A. In fairness, if those arguments were... if that was not in dispute there, I'm not sure how much we could take from Warner. Well, Your Honor, it's the line that I think we see drawn throughout the explanatory notes and drawn throughout all the notes we're talking about, is it used to treat disease. And that is why the headache is important. This is a used headache. We should apply the part-time practice. I think you can tell from some of the questioning that there's a certain... well, at least in my mind, I'm looking for something more precise and concrete about the line. I keep thinking of products that have been altered so that a disease won't flare up, won't lead to terrible symptoms by taking the gluten out of bread or something like that. The disease is not going away, but the manifestations can be avoided or diminished or something. Tell me what, by the language, is different about that than your medical foods. Your Honor, what is different is the medical foods, unlike that sort of product, are used as treatment for a disease. For example, to give... So, just again, some of these words keep getting used in ways that immediately in my mind trigger, boy, I need to know more of what you mean by that. Is treatment of disease, does that include giving nutrients in such a way that an underlying disease, which will be chronic, doesn't manifest in bad symptoms? Yes, Your Honor, it does. So, an example here, KetoCal, used for treating intractable epilepsy. It has, as I understand, almost an immediate effect sometimes. You start taking KetoCal, the epilepsy seizures lessen or go away. So it is being used to treat the disease. It doesn't make it go away. It doesn't heal or cure. So why is that different from, I don't know, taking the gluten out of bread for somebody who is allergic to gluten or something like that? Because, Your Honor, that is an adapted food, and so I think that is closer to or crosses the line that's being drawn by Note 1A. But I would prefer... I think the reason that, in my view, nutrition should prevail here comes down to three simple things. Everyone agrees medical foods fall within the terms of the heading, 30.04. They are not clearly or unambiguously excluded under Note 1A. It doesn't say that. We've got an unclear in-scope note. They are, therefore, at least classifiable under 30.04. And we have several things, including this Court's decision telling us at Bauer that where they are classifiable under a more specific heading, that's where they should be classified. Now, I mean, the way you just structured that seems to me to rely on the methodological point that we were talking about way at the beginning, that in your view, if something looks like it's within the terms of the heading, in order for the note to take it out, it has to meet a kind of clear statement rule. Where have we said that? In Bauer, Your Honor. So I would point you to footnote 6 in Bauer where it said... Let me find this really quickly. I know we're running out of time here. My apologies. I think this language is pretty on point. Assuming the subject merchandise is prima facie classifiable under both Chapters 62 or 95, that's what we have here, each chapter has associated with it an exclusionary note that would ordinarily preclude classification of the merchandise under the competing chapter. And then it describes the two notes. They're not perfectly parallel. They're actually very similar to what we have here. One identifies specific things, sports equipment, the other just says not things in the other heading. And so what the court says is under that circumstance we must evaluate which heading provides the more specific description of the merchandise. Here we have a heading, 30 or 4, that provides a very specific description. I apologize for not having Bauer freshly in my mind. Was that one where each of the two chapters had a note saying we don't apply when the other one does? That doesn't feel like what we're talking about when we're talking about the relationship between Note 1A and the heading in 30 point whatever. You want to say when you read the heading and read those words, medical foods are included, you need a really special clear statement to use a general legal methodological term in Note 1A to alter that conclusion. I think government's position is no, you don't. Note 1A and the heading words are completely parallel and whatever is in Note 1A is outside that heading by definition. So just answer the question, what is within Note 1A? And in particular, what's dietetic? Adapted foods, foods that have been changed. This is not bread with something removed. This is a chemical manufactured compound in pharmaceutical companies, sold through the medical pipeline, covered by insurance. At the end of the day, you're out of these cases. The line I see through them is the court ultimately asks, what is this more like? This is much more like medicine, which is an analogous term, than it is like food in any traditional sense. Just very quickly, on your alternative argument, Chapter 98, I just want to understand, is it truly an alternative? Could you prevail in theory under both, or are they mutually exclusive? If you're okay under 30 to 4, then you're not okay under 98, 17, and vice versa, or do I misunderstand? It is a secondary heading that we think applies, so we think it's also or alternatively. It's possible that you could be correctly categorized under both of those? Yes, because it is specifically a secondary heading. Just clarify, what does that mean, the word secondary heading? Meaning, as I understand it, and I am not a day-to-day trade lawyer, this is one of the few headings that can be listed alongside after you've identified another heading, and then we'll give it duty-free treatment despite what other heading applies. It's a secondary heading. It's a special tariff treatment given to certain classes of goods for good purposes like here, under the Nairobi Protocol to help handicapped persons. Is there any real-world practical reason that choosing either the Chapter 98 or the Chapter 30, one of those is more clarifying for the industry or some other reason that one might choose which to apply? Your Honor, we do think that it is important to clarify that the terms of 30.04, this broad phrase, Medicines for Therapeutic Use, do include these types of products. There are more of these products out there. There are other manufacturers. So we do think it is important for that purpose to not have to rely solely on the exception for goods used by handicapped people. And the Chapter 98 point requires the endorsement of a somewhat artificially narrow interpretation of the word therapeutic, right? Well, Your Honor, it's just the interpretation. I do need to be a little bit disparaging. There's some authority for that. It's the interpretation articulated in Richards Medical, which is for this purpose only. Therapeutic means it's a narrower meaning so long as it doesn't heal or cure. Thank you, Your Honor. Thank you. Why don't we start something about the time? Let's hear from the Governor. Good morning, Your Honors. Nutritious medical foods are dietetic foods, or at least foods that are similar to dietetic foods that are excluded from classification as medicaments of heading 30.04. And because they're undisputedly therapeutic, they're likewise excluded from heading 98.17, the NIAID protocol provision, which excludes therapeutic articles. Just to address some of the things off the top of my head here, I don't think we've conceded quite as much as Ms. Berman has said that we have. We don't concede that the word medicaments would cover these products. As we explained below, medicaments implies some sort of medicinal agents, like an active ingredient, something along those lines. And Nutritious has said throughout this case that these products, or at least conceded in interrogatory responses, that these products don't have any active pharmaceutical ingredient. You do not dispute that they're used for treatment? Of course, we don't dispute that. They're nutritional therapies. And just because they're nutritional therapies doesn't mean that we read out the word medicaments or that we read out Note 1A to Chapter 30. And on that last point, I understand Nutritious' position would be the same if Note 1A to Chapter 30 said that it excluded foods and beverages such as Neocate, MSUE, Loflexin, et cetera, all the products that are in this case. Yeah, life is never that simple. I wouldn't have a job if it were because it would be much easier to classify things. But their understanding of Bauer and the notes being mutually exclusive, my understanding is that that would be the same position if even the note were specific to these products. That can't be the case. Our understanding of dietetic is that it's a food that has been specially formulated for the management or treatment of a particular condition. And a prime example of that is a diabetic food, which is treated separately from dietetic in the therapy. But diabetic foods, yes, they remove sugar. They remove the sorts of things that could be a problem for someone with diabetes. Dietetic foods do the same thing. Dietetic foods like Neocate, they remove whole proteins from the mix and replace them with amino acids. So just like removing sugar or removing gluten from a food, particular nutrients are removed and replaced with others for either complete nutrition in a child or nearly complete nutrition, as a nutrition expert put it. It does seem close to the center of nutrition's argument to want to distinguish two things. One, taking a normal use food and altering it. And on the other hand, starting with a bunch of amino acids, proteins, creating something that had never existed before, doesn't look like an apple or any other normal food. What's your response to that being, and doing it for the purpose, very specifically for the purpose of treating very specific diseases? Right, I don't think that that's a distinction that could matter in this case. I think mainly because there's nothing in the text about wanting to suggest that the manner of preparation matters. So, you know, some sort of like Frankenstein food or a soil and grain or something that's being cooked up in a lab, I don't think it makes a difference how it's being made. Obviously the fact that it's being made in a lab, it's being made... Does it make any difference for purposes of qualification under the FDA statute and regulation for what constitutes a medical food? It very well might, yes. I believe it would. I'm not as up to speed on certain, all the various regulations that go with that, but yes, there's a different list of requirements that medical foods must meet to be branded as medical foods. Is it right or not right to say that this case has been presented to us as involving the question whether medical foods under the FDA regime come within 30.06 or 0.04? You know, I think it's certainly been presented that way. There's been no argument, also tell me if this is right, that differentiates among any of these five products. Everybody is presenting to this as either all five products are in one place or all five products are in another place, but there are obviously some distinctions and I think at least in the trial court you made some points about some of the distinctions, but I think not an argument that said, you know, two of them are in this and three of them are in the other. That's correct. On appeal, we've just gone with all the products and we treated the same. Before the trial court, we distinguished the EOK on some grounds, but I don't think that that's important. Obviously, we haven't briefed that, so it's not something. And if we thought that the question to be answered, because it's how it was framed, was whether medical foods within the FDA law, meaning, come within 30.04, how would that change the analysis that you're presenting? I don't think it would change the analysis at all, because our position is that the FDA's understanding or its definition of what a medical food is, is essentially the same as what's covered by a dietetic food, at least partly. Dietetic is a broader term that's going to cover a bunch of other things, too. Does dietetic cover diabetic? You know, it's an interesting point. I think it would. The broadest understanding of dietetic, of food that's been formulated, especially in that case for the management of diabetes, there's a different FDA regime, as I understand it, for diabetic food specifically. And the Canadian International Trade Tribunal made the same point in distinguishing that dietetic must be meaning something else other than diabetic. So I think our frontline position there would be that dietetic, it would include that, and it's including diabetic, presumably specifically because that's a well-known article of commerce, and so that's something that... And are you giving dietetic a meaning that is, I guess, sort of follows, not the Latin phrase that the other side has used, but a very similar Latin phrase, the nociceptor phrase, that is, you have a list, that is, we don't have something where there's a general term, either it's a front or the back, and then specific examples, I think that's the Latin canon that is invoked, which I think is not quite the right one. But the other one is, when you have a list of things, treat them, particularly with a such as in front of it, treat those terms as much as possible as akin to each other. Right, illustrative, not exhaustive, and treat them as in the same sort of category. Yeah. Exactly. So, are you giving dietetic that kind of, you know, that kind of meaning as focused as the word diabetic? I kind of thought you were giving dietetic a pretty broad meaning. Well, I think that, you know, dietetic, I think we still win either way, whether we interpret dietetic more akin to diabetic and fortified foods and the other listed items there, or whether we take a broader view of what dietetic means according to the plain meaning and dictionary definitions we've cited and all those other sources. But, you know, the safer route presumably would be to say, they're in the same category, dietetic and diabetic foods. You know, these are foods that have been adapted or formulated, however you want to phrase it. Well, maybe, actually, that might be a crucial thing. Adapted and formulated might be something like the very distinction that the other side is arguing for, and it has a certain intuitive appeal. Start with a normal food and maybe change it a little, and the other is, you know, create soylent green. Right. I think the problem with that, though, is that there are plenty of headings, for instance, you know, headings that cover... That might not be quite right, because soylent green is actually not... It's people, right? Yeah. You know, I think the problem there is that there are plenty of food headings, food preparation headings, that cover, you know, baby formula. These are regular baby formulas that are going to be made in the lab as well, the components that go into it, and they're also going to be classified under provisions that cover food preparations. I don't think that a normal food being adapted could possibly be... Is baby formula a medical food in the FDA regime? I don't believe that it is. I'm not quite sure that I... There are special regulations that govern it, though. I do know that. So it is at least carved out that there's more scrutiny of how that's labeled and how it's produced. If we were to go the other way, the way the other side, does the government have concerns? I don't want to go too far outside the record, but is there this swath of goods that the government has classically not treated under 30 that this case would open up the door to? Well, I think there could be, yes. I mean, there's plenty of products on the market that are formulated in a certain way, either to increase certain nutrients or decrease others. That's going to create a big problem at the border for Customs in trying to figure out, okay, what is really a medicament? What's really therapeutic and what's not? And it's much easier to say, well, let's look at what the label says. Are there drug facts on the label? Is there a medical food designation instead? Or is this a dietary supplement product? That's much easier for Customs to be able to figure out, okay, this product fits in the food basket or it fits in the medical basket. Why would it be difficult if the products had the medical foods designation on the label and the rule was medical foods come under Chapter 30? Well, actually, it wouldn't be. It would be difficult for me, I suppose. It wouldn't be. But there are going to be, you know, you can imagine, you know, weight loss bars, other protein products, those sorts of things where, you know, the argument is going to be, well, this is just like that. This is the sort of, you know, nutrient-enhancing product, something like that that's going to affect the structure or function of the body. And this is something that should likewise be classified as... I think I heard Ms. Berman say that these medical foods cannot be taken by healthy people. Is that undisputed? And if so, isn't that an important distinction here? For all of the foods except for the UK, I would say yes. Those are not foods that generally healthy people would take. I don't think that that's the distinction that ought to be made. I think, you know, the Note 1A presumes that there are going to be those foods that are used nutritionally, therapeutically, right, as we understand it, diabetic and dietetic foods. I don't think that... I suppose some diabetic foods could be consumed by healthy people. I'm not sure that's true with respect to all of them. But what you were telling us... well, we're talking about treating diseases, right? I mean, how do nutrition bars qualify? Well, right, they wouldn't. I don't think they would, but... Those would be vitamin C. Right, right. So the vitamin C cases, for instance, right. There might be some that are intended for treatment of disease and there might be some that aren't. But our bottom line point is that the word dietetic, as it's found in the Note 1A of Chapter 30, is excluding the foods just like these. And just say again, if you have already said dietetic, in your view, means? Foods specially formulated for the management or treatment of a condition. It doesn't have to be, you know... It can be any type of condition, any type of disease, any type of medical purpose for which someone's going on a diet. It could be weight loss, it could be a particular disease, it could be diabetes, or could exclude that based on the fact that diabetic is mentioned specifically in that same note. Our understanding is backed up, you know, not just by what the trial board said, but by nutritionism documents. They describe at least the goods that contain amino acids as dietetic goods. The dictionary of food and nutrition equated medical foods with dietetic foods. So, you know, it might be a broader understanding of diabetic, but we think it's well supported by all those various sources. I guess I'll turn briefly now to the Nairobi Protocol provision. You don't have to decide what the word article means, obviously. You can just say... And just on that point, do I understand correctly that's not a point that the Court of International Trade made, right? So, what we tried to do with it... You're right, it did not say that in those terms. But you made this argument to the trade court? We did not, no. So the trade court said that whatever the scope of the Nairobi Protocol provision, it cannot be so broad as to cover nutritional preparations... Right, but it didn't make the point that the word articles does not include preparations. Correct. We were just trying to put a finer point on that, basically. But that's obviously a very broad argument. You don't have to decide that. It's simple enough to just say that these foods are therapeutic, they're nutritionally therapeutic, they're used to treat disease when medications fail. And so, for that reason, they're excluded from classification under U.S. Note 4b to the subchapter that contains Heading 1917. Obviously, Richard's Medical Company has an explanation of what therapeutic means in that context. I really don't think that it's much different, or at all different, from what therapeutic means in Heading 3004. Richard's Medical Company was just explaining, based on a Senate report that accompanied the enactment of this particular tariff heading, that therapeutic can't be so broad as to cover allegative adaptations. For instance, I believe it's parts used in steering wheel adaptations for persons with disabilities. So, that sort of steering wheel adaptation would be covered by the NIRB protocol, but if it was an easily-removable thing that was going to be used for tariff engineering, then it wouldn't be. That Senate report, which the Court described, is not very good. It would be used for what engineering? Oh, sorry, tariff engineering. Tariff engineering. Right. Entering a good is one thing, and then doing something right after it's immediately imported to bring it into it. It would otherwise be classified differently under a higher duty rate. I see. So, you import a van with certain properties, and then you take out the stuff that got you in under the lower tariff. Yes. Exactly. That's never happened before, surprisingly enough. No, it has. That's the Ford case, exactly. That's legal. Obviously, that's fine. You can tariff engineer so long as it meets the requirements of the tariff engineering court of Staten Island and places like St. Germain. But the point is that legislative history wasn't really helping out in determining what the scope of therapeutic means, and we think that it makes sense to interpret the term the same across the tariff therapeutic means for the treatment of disease. You made brief mention of Canada. The Gray Brief at page 21 says that ultimately something happened in Canada that favors their side under Chapter 98. Could you just respond to that briefly? Sure. What happened in Canada is that the Canadian Border Services Agency decided to settle after the Canadian International Trade Tribunal ruled against Nutritia on neocake products. My understanding is that the agency there decided to settle by liquidating the neocake products or maybe different products under their enactment, their implementation of the Nairobi Protocol in Canada. My understanding is that that implementation does not have an exclusion like what we have here for therapeutic articles, medicines, and  But that's what happened subsequently in Canada. Thank you.  Thank you. We'll be still at three minutes everybody. Thank you, Your Honor. Your Honor, I want to start by noting that the government has changed its definition of the word dietetic. In its brief it says, and this is page 13, dietetic foods are those adapted for use in special diets. These are not adapted foods. It didn't say formulated, and that is an important difference in our view. I'm sorry, read what page? Page 13 of the government's brief. Thank you. Yes. And Your Honor, the government also keeps trying to use terms that are not in the relevant headings there. For example, active ingredient is nowhere in heading 30.04 or any of the other headings we're talking about. But interestingly, Your Honor... Can you win if the definition of dietetic is what Mr. Mathers said this morning it is? Specially formulated? Your Honor, I think we still can because you have to go back to what does the heading say? Is it used for therapeutic purposes? That is what you govern here. This is a used provision. You apply the carborundum factor. So whether it's formulated or adapted, that should be our guiding star here. And that's what we see. That's the line we see drawn in the explanatory notes for both 30.04 and 21.06. So I think we still can win. But I do think that's an important distinction here. Your Honor, I also wanted to point on the active ingredients. I'm sorry. This seems so central and I'm sorry to take up your limited time. But is it fair to say that the relevant canon of construction almost has to mean that dietetic to make it parallel to diabetic and more akin to the dietetic and not to displace the other items needs to be limited to adapted but not formulated? I think that is true, Your Honor. And I would point to the other categories in Note 1A, which include very specific things like tonic waters and mineral waters. These are all food products. Many of them are specifically listed in Section 4. Mineral waters is under Heading 21.02. So again, and I think that gets to one thing we didn't mention earlier, which is that parenthetical at the end of Note 1A, which says Section 4. We think that is clearly intended to say it has to be things that qualify under Section 4. And I'd encourage the Court to look at the list of Section 4 headings. They're all traditional foods. Chocolate, wine. Maybe that's not a traditional food, but you get my point. Cocoa beans, sausages. Yeast is listed there. And that, we know from Note 1F, says if yeast is put up as a medicament, if it's used for therapeutic use, then it goes in 3004. So again, all the arrows here, Your Honor, I think point to drawing this line between things for medical use to treat diseases and things that are not used to treat diseases. The Court was talking about the FDA regs. I do think it is important here to note that medical foods have this special definition that requires them to be used for the treatment of a disease or condition under medical supervision. And that they had to be, at the same time that definition was enacted, they had to be excluded from regulation as drugs under the FDCA, because otherwise they do qualify as drugs. So again, we're clearly on the medicine line of food and medicine here, Your Honors. And Your Honor, I just want to conclude by pointing out that if Note 1A means what they say it means, which is if the word dietetic basically means pertaining to any sort of nutritional product, that would eviscerate the scope of 3003 and 3004. Many medical products have nutritional components, or that is part of them. And that would be contrary to Note 1F, noting that yeast, if it's used for medicinal purposes, qualifies under 3004. Thank you, Your Honor. We thank both sides, and the case is submitted.